# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| Gwendolyn Thompson, individually and on behalf of others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> Amerilife Direct, LLC, <br><br> Defendant. | Case No.: 0:24-cv-60916-AHS <br><br> <u>CLASS ACTION</u> <br><br> **FIRST AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227(C) ET SEQ.** <br><br> **JURY TRIAL DEMANDED** |

## INTRODUCTION

1. Plaintiff, Priscilla Guidry ("Plaintiff"), brings this action against Defendant Amerilife Direct, LLC ("Defendant"), to secure redress for violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(c).

2. This is a putative class action pursuant to 47 U.S.C. § 227 *et seq*.

3. Defendant is involved in selling health insurance. To promote its services, Defendant engages in unsolicited marketing, harming

1

thousands of consumers in the process.

4. Through this action, Plaintiff seeks injunctive relief and damages to halt Defendant's illegal conduct, which has resulted in the invasion of privacy, harassment, aggravation, and disruption of the daily life of thousands of individuals. Plaintiff also seeks statutory damages on behalf of herself and members of the class, and any other available legal or equitable remedies.

5. Plaintiff makes these allegations on information and belief, with the exception of those allegations that pertain to Plaintiff, or to Plaintiff's counsel, which Plaintiff alleges on personal knowledge.

6. While many violations are described below with specificity, this Complaint alleges violations of the statutes cited in its entirety.

7. Unless otherwise stated, all the conduct engaged in by Defendant took place in the Middle District of Florida.

8. Any violations by Defendant were knowing, willful, and intentional, and Defendant did not maintain procedures reasonably adapted to avoid any such violation.

9. Unless otherwise indicated, the use of Defendant's names in this Complaint includes all agents, employees, officers, members, directors,

heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of Defendant's named.

**JURISDICTION AND VENUE**

10. Jurisdiction is proper under 28 U.S.C. § 1331 as Plaintiff alleges violations of a federal statute, the TCPA. Jurisdiction is also proper under 28 U.S.C. § 1332(d)(2) because Plaintiff alleges a national class, which will result in at least one class member belonging to a different state than that of Defendant. Plaintiff seeks up to $1,500.00 (one-thousand-five-hundred dollars) in damages for each call in violation of the TCPA, which, when aggregated among a proposed class numbering in the tens of thousands, or more, exceeds the $5,000,000.00 (five-million dollars) threshold for federal court jurisdiction under the Class Action Fairness Act ("CAFA"). Furthermore, Defendant and Plaintiff are residents of different states (Mississippi and Florida, respectively). Therefore, both the elements of diversity jurisdiction and CAFA jurisdiction are present.

11. Venue is proper in the United States District Court for the Middle District of Florida pursuant to 28 U.S.C. § 1391(b) and (c) because Defendant is deemed to reside in any judicial district in which it is

subject to the court's personal jurisdiction, and because Defendant provides and markets its services within this district, Defendant established sufficient contacts to subject it to personal jurisdiction. Further, Defendant's tortious conduct against Plaintiff occurred within the State of Florida and, on information and belief, Defendant has made the same phone calls complained of by Plaintiff to other individuals within this judicial district, such that some of Defendant's acts in making such calls have occurred within this district, subjecting Defendant to jurisdiction in the State of Florida.

**PARTIES**

12. Plaintiff is a natural person residing in the City of Jackson, State of Mississippi.

13. Defendant is a company based in Clearwater, Florida, that offers health insurance products and services.

**THE TCPA**

14. The TCPA facilitated the creation and "operation of a single national database to compile a list of telephone numbers of residential subscribers who object to receiving telephone solicitations[.]" 47 U.S.C. § 227(c)(3).

15. Accordingly, the TCPA prohibits "any person from making or transmitting a telephone solicitation to the telephone number of any subscriber included in such database[.]" 47 U.S.C. § 227(c)(3)(F)

16. Congress empowered the Federal Communications Commission ("FCC") to issue rules and regulations implementing the TCPA.

17. According to the FCC's findings, calls in violation of the TCPA are prohibited because, as Congress found, automated and prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls and such calls can be costly and inconvenient.[1]

18. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used.[2]

19. In 2012, the FCC issued an order tightening the restrictions for automated telemarketing calls, requiring "prior express written consent" for such calls to wireless numbers.[3]

---

[1] *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003).
[2] *Id*.
[3] *See In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C.R. 1830, 1838 ¶ 20 (Feb. 15, 2012).

5

20. To obtain express written consent for telemarketing calls, a defendant must establish that it secured the plaintiff's signature such that plaintiff had "'clear and conspicuous disclosure' of the consequences of providing the requested consent…and having received this information, [Plaintiff] agree[d] unambiguously to receive such calls at a telephone number the [plaintiff] designate[d]."[4]

21. The TCPA regulations promulgated by the FCC define "telemarketing" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services."[5]

22. In determining whether a communication constitutes telemarketing, a court must evaluate the ultimate purpose of the communication.[6]

23. "'Telemarketing' occurs when the context of a call indicates that it was initiated and transmitted to a person for the purpose of promoting property, goods, or services."[7]

---

[4] *Id*. at ¶ 33.
[5] 47 C.F.R. § 64.1200(f)(12)
[6] See *Golan v. Veritas Entm't, LLC*, 788 F.3d 814, 820 (8th Cir. 2015)
[7] *Id*. at 820; (citing 47 C.F.R. §§ 64.1200(a)(2)(iii); 64.1200(f)(12)); See also *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 F.C.C. Rcd 14098 ¶ 141 (2003)).

24. The FCC defined telemarketing as calls motivated in part by the intent to sell property, goods, or services.[8] This is true whether call recipients are encouraged to purchase, rent, or invest in property, goods, or services during the call or in the future.[9]

25. In other words, offers "that are part of an overall marketing campaign to sell property, goods, or services constitute" telemarketing under the TCPA.[10]

26. If a call is not deemed telemarketing, the defendant must nevertheless demonstrate that it obtained the plaintiff's prior express consent.[11]

27. The United States Court of Appeals for the Eleventh Circuit found that a single, unwanted telephone call or text is enough to satisfy Article III standing, pursuant to the TCPA.[12] The Court noted that "the harm associated with [one] unwanted text message shares a close relationship with the harm underlying the tort of intrusion upon seclusion."[13]

---

[8] *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 F.C.C. Rcd 14014 ¶¶ 139-142 (2003).
[9] *Id*.
[10] *Id*. at ¶ 136.
[11] *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30 FCC Rcd. 7961, 7991-92 (2015) (requiring express consent "for non-telemarketing and non-advertising calls.")
[12] *Drazen v. Pinto*, 74 F.4th 1336, 1339 (11th Cir. 2023)
[13] *Id*. at 1345.

Because "[b]oth harms represent 'an intrusion into peace and quiet in a realm that is private and personal'…the harms are similar in kind, and the receipt of an unwanted text messages causes a concrete injury."[14]

## GENERAL ALLEGATIONS

28. At all times relevant, Plaintiff was an individual residing within the State of Mississippi.

29. At all times relevant, Defendant conducted business in the State of Florida.

30. Plaintiff put her number on the National Do Not Call Registry on April 6, 2021.

31. Defendant is required to check the National Do Not Call Registry before attempting to call.[15]

32. Plaintiff uses her cellular telephone for residential purposes, including talking to friends and family.

33. On or around April 16, 2024, Plaintiff received an autodialed phone call from the phone number (601) 383-3072. Upon information and belief,

---

[14] *Id.*
[15] 47 U.S.C. §§ 227(c)(3)(F)

this number belongs to Defendant and/or Defendant's agent. Plaintiff rejected the telephone call.

34. On or around April 18, 2022, Plaintiff received an autodialed phone call from the **exact same** phone number (601) 383-3072. Plaintiff answered and spoke to an agent who attempted to screen her as a potential health insurance consumer. When the agent felt satisfied, the agent transferred Plaintiff to Jill Taylor with Senior Healthcare Direct. Ms. Taylor tried to sell her health insurance through Senior Healthcare Direct. Before Plaintiff hang up, Ms. Taylor provided Plaintiff a call back number of (855) 368-4717.

35. Defendant performs business under the name Senior Healthcare Direct. Defendant's website includes the caption, "powered by AMERILIFE" under its company name.[16]

36. Upon information and belief, Defendant engaged an initial intake specialist to screen its telemarketing phone calls for potential customers. As Defendant is a health insurance broker, Defendant initially asked probing questions to see if Plaintiff qualified as a potential buyer. When Defendant felt satisfied with Plaintiff's initial

---

[16] https://www.seniorhealthcaredirect.com (Last accessed 7/23/2024)

responses, Defendant transferred her directly to an insurance agent whose purpose was to facilitate the direct sale of insurance.

37. Plaintiff's counsel investigated the insurance agent and found that "Jill Lynn Taylor" is employed with Defendant and uses the same telephone number (855) 368-4717 that had been provided to Plaintiff as a call back number.

38. Ms. Taylor's profile as a "licensed agent" can be found on Defendant's website.[17]

39. Defendant's phone calls constitute telephone solicitation because it encouraged the future purchase or investment in property, goods, or services under 47 U.S.C. § 227(a)(4), i.e., attempting to sell Plaintiff health insurance.

40. Defendant made the phone calls within this judicial district and, therefore, Defendant's violation of the TCPA occurred within this district. Upon information and belief, Defendant made other phone calls to individuals residing within this judicial district and throughout the United States.

---

[17] https://www.seniorhealthcaredirect.com/team-member/jill-taylor (Last accessed 7/23/2024)

41. At no point in time did Plaintiff provide Defendant with her express written consent to be contacted. This is in violation of 47 U.S.C. § 227(a)(5).

42. Defendant's unsolicited phone calls caused Plaintiff actual harm, including invasion of her privacy, aggravation, annoyance, intrusion on seclusion, trespass, and conversion.

43. Defendant's phone calls also inconvenienced Plaintiff and caused disruption to her daily life.

44. Defendant's unsolicited phone calls caused Plaintiff actual harm. Specifically, Plaintiff estimates that she spent numerous hours investigating the unwanted phone calls including how they obtained her number and who the Defendant was.

45. Furthermore, Defendant's phone calls took up memory on Plaintiff's cellular phone. The cumulative effect of unsolicited phone calls and voicemails like Defendant's poses a real risk of ultimately rendering the phone unusable for other purposes as a result of the phone's memory being taken up.

## CLASS ALLEGATIONS

**PROPOSED CLASS**

46. Plaintiff brings this case as a class action pursuant to Fed. R. Civ. P. 23, on behalf of herself and all others similarly situated.

47. Plaintiff brings this case on behalf of Class defined as follows:

<u>The Federal TCPA DNC Class</u>

All persons within the United States who received two or more telemarketing phone calls within a 12-month period from Defendant to said person's residential telephone without consent, and such person had previously included their name on the National Do Not Call Registry at least 31 days prior to receiving Defendant first call, within the four years prior to the filing of this Complaint.

48. Defendant and its employees or agents are excluded from the Class. Plaintiff does not know the number of members in the Class but believes the Class members number in the several thousands, if not more.

**NUMEROSITY**

49. Upon information and belief, Defendant has placed automated and/or prerecorded calls to cellular telephone numbers belonging to thousands of consumers throughout the United States without their prior express

consent. The members of the Class, therefore, are believed to be so numerous that joinder of all members is impracticable.

50. The exact number and identities of the Class members are unknown at this time and can only be ascertained through discovery. Identification of the Class members is a matter capable of ministerial determination from Defendant's call records.

**COMMON QUESTIONS OF LAW AND FACT**

51. There are numerous questions of law and fact common to the Class which predominate over any questions affecting only individual members of the Class. Among the questions of law and fact common to the Class are:

    (1) Whether Defendant made non-emergency calls to Plaintiff's and Class members' cellular telephones;

    (2) Whether Defendant can meet its burden of showing that it obtained prior express written consent to make such calls;

    (3) Whether Defendant's conduct was knowing and willful;

    (4) Whether Plaintiff and the putative class members' phone numbers were on the national do-not-call registry at the time Defendant called;

(5) Whether Defendant is liable for damages, and the amount of such damages; and

(6) Whether Defendant should be enjoined from such conduct in the future.

52. The common questions in this case are capable of having common answers. If Plaintiff's claim that Defendant routinely made phone calls to telephone numbers assigned to cellular telephone services is accurate, Plaintiff and the Class members will have identical claims capable of being efficiently adjudicated and administered in this case.

**TYPICALITY**

53. Plaintiff's claims are typical of the claims of the Class members, as they are all based on the same factual and legal theories.

**PROTECTING THE INTERESTS OF THE CLASS MEMBERS**

54. Plaintiff is a representative who will fully and adequately assert and protect the interests of the Class and has retained competent counsel. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Class.

**PROCEEDING VIA CLASS ACTION IS SUPERIOR AND ADVISABLE**

55. A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit because individual litigation of the claims of all members of the Class is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Class are in the millions of dollars, the individual damages incurred by each member of the Class resulting from Defendant's wrongful conduct are too small to warrant the expense of individual lawsuits. The likelihood of individual Class members prosecuting their own separate claims is remote, and, even if every member of the Class could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

56. The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. For example, one court might enjoin Defendant from performing the challenged acts, whereas another may not. Additionally, individual actions may be dispositive of the interests of the Class, although certain class members are not parties to such actions.

# COUNT I

## NEGLIGENT AND WILLFUL VIOLATIONS OF THE TCPA, 47 U.S.C. § 227(C)(5)

### (ON BEHALF OF PLAINTIFF AND THE CLASS)

57. Plaintiff re-alleges and incorporates paragraphs 1-56 as if fully set forth herein.

58. A person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may, if otherwise permitted by the laws or rules of court of a State bring in an appropriate court of that State.

   **(A)** an action based on a violation of the regulations prescribed under this subsection to enjoin such violation,

   **(B)** an action to recover for actual monetary loss from such a violation, or to receive up to $500 in damages for each such violation, whichever is greater, or

   **(C)** both such actions.

59. Defendant—or third parties directed by Defendant—dialed numbers without to make non-emergency telephone calls to the telephones of Plaintiff and the other members of the Class defined below.

60. These calls were made without regard to whether or not Plaintiff or class members were on the National Do Not Call Registry. In fact, Defendant did not have prior express consent to call the cell phones of Plaintiff and the other members of the putative Class when its calls were made.

61. Defendant has, therefore, violated § 227(c)(5) of the TCPA by making, or directing a third party to make, two or more non-emergency telephone calls to the phones of Plaintiff and the other members of the putative Class without their prior express written consent.

62. Defendant knew that it did not have prior express consent to make these calls especially since Plaintiff told Defendant she was not interested in what Defendant was offering. The violations were therefore willful or knowing.

63. As a result of Defendant's conduct and pursuant to § 227(c)(5) of the TCPA, Plaintiff and the other members of the putative Class were harmed and are each entitled to a minimum of $500.00 in damages for

each violation and a maximum of $1,500 in statutory damages for willful violations. Plaintiff and the class are also entitled to an injunction against future calls. *Id*.

**WHEREFORE**, Plaintiff, on behalf of herself and the other members of the Class, prays for the following relief:

a. A declaration that Defendant's practices described herein violate the Telephone Consumer Protection Act, 47 U.S.C. § 227;

b. An injunction prohibiting Defendant from calling telephone numbers on the national do-not-call registry without the prior express consent of the called party;

c. An order naming Plaintiff as the class representative;

d. An order naming Plaintiff's counsel as class counsel;

e. An award of actual and statutory damages;

f. Treble damages; and

g. Such further and other relief the Court deems reasonable and just.

///

///

///

///

## TRIAL BY JURY

64. Pursuant to the seventh amendment to the Constitution of the United States of America, Plaintiff is entitled to, and demands, a trial by jury.

Dated: August 26, 2024               Respectfully submitted,

                                       BY: /S/ RYAN L. MCBRIDE
                                       RYAN L. MCBRIDE, ESQ.
                                       TRIAL COUNSEL FOR PLAINTIFF

Mohammad Kazerouni
Florida State Bar No. 1034549
**Kazerouni Law Group, APC**
245 Fischer Ave., Suite D1
Costa Mesa, CA 92626
Telephone: (800) 400-6808
Facsimile: (800) 520-5523
mike@kazlg.com

Ryan L. McBride
Florida State Bar No. 1010101
**Kazerouni Law Group, APC**
2221 Caminio del Rio S., Suite 101
San Diego, CA 92108
Telephone: (800) 400-6808
Facsimile: (800) 520-5523
ryan@kazlg.com